IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 19-CV-385

| | |
|---|---|
| JRT METALS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>CHONGQING RATO POWER CO. LTD.; CHONGQING RATO HOLDING (GROUP) CO., LTD.; ZHU LIEDONG; and OTHER JOHN DOE RATO CORPORATIONS, all whose true names are unknown,<br><br>Defendants. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff JRT Metals, Inc. ("JRT"), complains as follows against Defendants ChongQing Rato Power Co. Ltd. ("Rato"), ChongQing Rato Holding (Group) Co., LTD. ("Rato Holding"), Zhu Liedong ("Mr. Zhu"), and all other John Doe Rato Corporations ("Unknown Entities") (collectively "Rato Parties").

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff JRT is a North Carolina corporation, with its principal place of business at 1806 N Hwy 16 Bus, Denver, NC 28037.

2. Upon information and belief, Defendant Rato is a Chinese corporation with its principal place of business at NO. 99 Jiujiang Avenue, Shuangfu District, ChongQing 402247 China.

3. Upon information and belief, Defendant Rato Holding is a Chinese corporation with its principal place of business, per its website as of the time of this filing, at Chongqing City, Yubei District, the first floor of the 11 building 401147.

4. Upon information and belief, Defendant Mr. Zhu is a Chinese citizen and resident of the People's Republic of China. Mr. Zhu is the leader and officer of all known and unknown relevant Rato Parties, including Rato and Rato Holding. Mr. Zhu frequently travels to the United States to conduct business for the Rato Parties, including conduct discussed herein.

5. Upon information and belief, Defendant Unknown Entities are corporations incorporated in China and affiliated with Rato, the names and addresses of residences of which are unknown, but through and among which Defendants shifted funds in an effort to avoid performance under the Agreement that has been breached as alleged herein.

6. Mr. Zhu communicated and negotiated all statements, omissions, and acts complained of herein both individually and on behalf of the Rato Parties.

7. The Rato Parties' corporate veil should be pierced because Mr. Zhu owns a majority of each of the Rato Parties, and/or exercised complete dominion over the Rato Parties, not only of finances, but of policy and business practices in respect to the conduct discussed herein such that the Rato Parties had no separate mind, will, or existence of their own.

8. The Rato Parties' corporate veil should also be reverse-pierced because Rato and the Unknown Entities are a mere alter ego of Rato Holding and Mr. Zhu,

and there is such unity of interest amongst the Rato Parties that their separate personalities no longer exist.

9. For example, Mr. Zhu directed funds amongst the Rato Parties to disguise Rato and Rato Holding's assets in an attempt to evade performing Rato's obligations under the agreement discussed herein.

10. The aforesaid control and breach of duty proximately caused the injury and loss JRT complains of herein.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the civil action is between citizens of a State and citizens or subjects of a foreign state.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## FACTUAL ALLEGATIONS

13. During 2010, representatives of what would become JRT and the Rato Parties discussed a proposal to create a venture that would be called Denver Global Products, Inc. ("DGP"). DGP would develop, manufacture, market, and distribute a new self-powering, electric hybrid multi-purpose vehicle called the MPV.

14. DGP, a North Carolina corporation, was formed in October 2010, with a principal place of business at 1419 East Gaston Street, Suite F, Lincolnton, North Carolina 28092.

15. On or about November 2, 2010, JRT was formed.

16. Together, JRT and Davis Sales Group, LLC ("DSG"), an Illinois entity controlled by Rato, provided an initial investment of $4,000,000 to DGP.

17. In exchange, JRT received a 50% ownership interest in DGP, and DSG received a 50% ownership interest in DGP.

18. In December 2011, JRT, DSG, and Rato executed and signed an agreement entitled Stock Purchase, Merger, and Employment Agreement (the "Agreement"). The Agreement is attached as **Exhibit A** and incorporated herein by reference.

19. The Agreement required JRT and DSG to transfer their respective interests in DGP to Rato. In exchange, the Agreement required Rato to transfer a 10% ownership interest in Rato to JRT and a 10% ownership interest in Rato to DSG. (Agreement, ¶ 2).

20. At the time, this 10% ownership interest in Rato was valued at over $75 million. Within a year of when the agreement was signed, the value of the 10% of Rato due to JRT was $150 million.

21. The Agreement provides that the share transfer will occur "at the time of the execution of this agreement, or as soon thereafter as is reasonably possible from the date of the execution of this agreement." (Agreement, p. 1).

22. The Agreement further provides that "[t]he closing of the transactions contemplated by this Agreement ("Closing"), shall be held at the location of the respective Parties, on December 31, 2011, or such other place, date and time as the parties hereto may otherwise agree." (Agreement, ¶ 1).

23. The Agreement also states: "Rato represents the intent to offer the stock of Rato to the public upon circumstances conducive to an Initial Public Offering (IPO)." (Agreement, ¶ 4(c)).

24. The Agreement contemplates that JRT and DSG's ownership interests in Rato will be reduced in the event certain financial targets are not met for Rato and DGP. Exhibit "C" to the Agreement sets forth the financial targets for 2012 through 2016.

25. Financial targets were met from 2012 through 2016, and accordingly, the ownership interests in Rato to which JRT was entitled under the Agreement required no reduction.

26. JRT fully performed under the agreement. JRT transferred its 50% interest in DGP to Rato.

27. Rato has failed to transfer 10% of its shares to JRT as required by the Agreement. Rato continues to elude performance by transferring its assets amongst the multiple shell corporations operated by Rato Holding (including Rato), substantially and negatively affecting the value of the ownership interest due to JRT on the basis of nothing other than the Rato Parties' shell game.

28. No IPO occurred.

29. Section 8(c) of the Agreement provides for arbitration in the event of disagreement between the parties. That provision is invalid, and this Court should adjudicate this dispute.

30. JRT seeks monetary damages for Rato's breach of the Agreement.

31. The breach was orchestrated by Rato Holding and Mr. Zhu, who received a substantial financial benefit from improperly retaining Rato's shares that were owed to JRT.

## COUNTS

### Count 1: Breach of Contract

32. Paragraphs 1 through 31 are incorporated by reference as if stated fully herein.

33. JRT and Rato entered into the Agreement for valuable consideration. Rato agreed to transfer to JRT a 10% ownership interest in Rato (subsequently worth over $150 million) in exchange for JRT's entire interest in DGP.

34. JRT performed under the Agreement by providing its shares in DGP to Rato.

35. Rato breached a material term of the Agreement by failing to transfer a 10% ownership interest in Rato to JRT, that was valued at approximately $150 million.

36. Rato's breach of the Agreement resulted in damages to JRT in an amount to be determined at trial, but in any event no less than $150 million.

37. At all relevant times and for all relevant actions, Mr. Zhu and Rato Holding controlled the business activities of Rato and the Unknown Entities such that the Rato Parties, Mr. Zhu, and Rato Holding should be viewed as one person.

38. Rato Holding and Mr. Zhu exercised complete dominion over the Rato Parties, such that the Rato Parties were under Mr. Zhu and Rato Holding's

complete control and dominion with respect to the JRT Agreement, and the Rato Parties had no separate mind, will, or existence of their own.

39. In an effort to avoid performing its obligations under the Agreement, Rato, and Rato Holding, have shuffled assets that belonged to Rato at the time the Agreement was executed, at Mr. Zhu and Rato Holding's direction, depriving Rato of value that constitutes the benefit of JRT's bargain, such that Mr. Zhu and Rato Holding (and potentially other Unknown Entities) should be held jointly and severally liable with Rato for any award in this action.

## Count 2: Unjust Enrichment

40. Paragraphs 1 through 39 are incorporated by reference as if stated fully herein.

41. JRT conferred a benefit on the Rato Parties by providing Rato and Rato Holding with all of its shares in DGP.

42. The Rato Parties accepted the benefit of DGP stock, evidenced by Rato acting as 100% shareholder of DGP and conducting business with and through DGP.

43. The benefit was not officiously conferred because JRT provided the DGP stock to Rato expecting Rato to honor the Agreement by transferring a 10% interest in Rato to JRT.

44. The benefit of DGP stock transferred to the Rato Parties by JRT is not gratuitous because it was made in exchange for a 10% interest in Rato.

45. The benefit of DGP stock provided to the Rato Parties by JRT is measurable because the stock has measurable monetary value.

46. As a result of the Rato Parties' unjust enrichment, JRT has suffered damages in an amount to be determined at trial.

## Count 3: Unfair and Deceptive Trade Practices

47. Paragraphs 1 through 46 are incorporated by reference as if stated fully herein.

48. In committing the acts described above, the Rato Parties engaged in unfair, unethical and unscrupulous and/or deceptive conduct by creating shell corporations to hide Rato assets and transferring assets amongst the Rato Parties and Unknown Entities, all in an attempt to evade performance under the Agreement.

49. Around the time of the Agreement, the negotiated ownership interest was valued between $75 and $150 million. However, the Rato Parties, in hiding the assets in numerous shell corporations, have devalued Rato.

50. The Rato Parties' conduct was in and affecting commerce, which N.C. Gen. Stat. § 75-1.1(b) defines as "all business activities, however denominated."

51. The Rato Parties' conduct proximately caused actual injury to JRT by substantially devaluing the agreed upon ownership interest and forcing JRT to spend time and money to uncover and track down the multiple shell entities in an attempt to recover the agreed upon value.

52. All in violation of N.C. Gen. Stat. § 75-1.1, *et seq*.

## Count 4: Conversion

53. Paragraphs 1 through 52 are incorporated by reference as if stated fully herein.

54. Once JRT fulfilled its obligations under the Agreement it became the lawful owner of the 10% ownership interest in Rato, valued at over $150 million, and was entitled to its immediate possession.

55. Rato and the Rato Parties excluded JRT from exercising its rights of ownership over its ownership interest by failing to transfer the ownership interest from Rato to JRT.

56. Rato and the Rato Parties further maliciously withheld JRT's property by hiding Rato assets amongst its numerous known and unknown shell corporations after multiple attempts by JRT to reclaim said property.

57. JRT has suffered damages, in an amount to be determined at trial, as a result of never receiving its 10% ownership interest and including that the value of the interest has significantly declined, JRT has been unable to receive any profits from its ownership interest, and JRT has lost and continues to lose countless opportunities for future investment and expansion.

WHEREFORE, JRT respectfully requests that the Court:

A. Award JRT the original bargained for value of the 10% ownership interest in Rato and/or the Rato Parties that contain Rato's assets to which JRT is entitled to own per the Agreement;

B.   Award to JRT monetary damages suffered by JRT as the result of Rato's breach of the Agreement;

C.   If the Court determines that the Agreement is invalid, award JRT at least the value of DGP stock that JRT transferred to Rato;

D.   Hold Rato Holding, Mr. Zhu, and the other Rato Parties responsible, jointly and severally with Rato, for any judgment entered in this action;

E.   Award JRT punitive damages in an amount to be determined by a jury pursuant to N.C. Gen. Stat. § 1D-15;

F.   Award all damages, including treble damages, available under N.C. Gen. Stat. § 75-1.1;

E.   Award JRT its costs and fees; and

F.   Grant to JRT such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues triable by jury.

Dated August 7, 2019.

William R. Terpening
N.C. Bar 36418

**TERPENING LAW PLLC**
5950 Fairview Road, Suite 808
Charlotte, North Carolina 28210
(980) 265-1700
terpening@terpeninglaw.com

*Attorney for Plaintiff JRT Metals, Inc.*